ERNEST JACOBSON, APPELLEE, V. R. D. MCWHA ET AL.,
APPELLANTS.

23 N. W. 2d 770

FILED JULY 12, 1946. No. 32088.

*Beeler, Crosby & Baskins,* for appellants.

*W. A. Stewart, Jr.,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

MESSMORE, J.

This is an action in equity to require an accounting of all the farming business transactions carried on between the plaintiff and defendants, and to interpret a contract entered into between them with reference to such business; also, that a receiver be appointed to take charge of all assets, including money and all property belonging to the parties to the contract; to sell the assets of such parties, and make distribution of the proceeds of the sale as provided for in the contract.

The trial court found generally in favor of the plaintiff and against the defendants, appointed a receiver, fixed his bond to be approved by the clerk of the district court, and provided further that the receiver, after being duly qualified, take possession of all the personal records and assets of every kind and description belonging to the plaintiff and defendants, being the assets of the business enterprise known as the McWha farms, and the receiver was further authorized to make a detailed inventory of his valuation of all property belonging to the McWha farms, and to make

further report to the court of his doings. From this judgment the defendants appeal.

For convenience, the appellants will be referred to as defendants, and the appellee as plaintiff.

It is not disputed that on March 2, 1936, Ernest Jacobson, plaintiff, and R. A. McWha and Mary McWha, entered into a contract whereby Ernest Jacobson was to manage certain farm lands owned by the McWhas, consisting of 1109.26 acres valued at $80,346.40 and situated in Lincoln County, Nebraska. R. A. McWha died in 1937 and, as provided for in paragraph 20 of the contract, R. D. McWha, a son, was appointed agent and proceeded to carry out the provisions of the contract until the same was terminated by the parties as provided for therein, on March 1, 1945.

The plaintiff sets forth three alleged breaches of the contract which do not affect the substantial rights of the plaintiff in an accounting and are therefore unnecessary of explanation in this opinion, except that in connection with one of the transactions there is a $500 Federal Land Bank stock item which has a value at this time and is to be taken into consideration in the accounting.

According to the plaintiff's petition, the basis of his asking for an accounting and the appointment of a receiver is that there is a large amount of property consisting of cash, livestock, crops, and machinery owned by the parties and they are unable to agree upon a distribution of the property; that the depreciation values as set forth in the schedules in the contract are too high, and when applied to the separate items their remaining value becomes so small that the plaintiff would not receive his just share of the profits.

The plaintiff also alleges in the petition that there was an oral modification to the contract with reference to obtaining a better share of the profits for the plaintiff.

The record discloses that the defendants are willing that an accounting shall be made on the actual value of all of the assets of the business, which includes the assets completely

depreciated out under the schedules in the contract, the assets carried on the books under the schedules in the contract at their depreciated values, and the assets purchased and charged to expense.

This method of accounting, under the circumstances, is the most equitable method to be employed, and the manner and method of depreciation as shown in the schedules in the contract becomes immaterial, likewise, the standard of depreciation set up in the plaintiff's audit. This method of accounting would also eliminate the claimed oral modification of the contract by the plaintiff, and in the main, would dispense with an interpretation of the contract, with the exception of the proportionate shares that the parties thereto are entitled to, and the contract would still be effective as to the items contained in the schedules therein, such items, for the purpose of the accounting, to be valued at their actual value as of March 1, 1945.

The contract provides that the manager shall receive as his salary a one-third interest in the net profits of the farm business; and further provides, upon the termination of the contract, (1) the manager shall be paid one-third of the net profits as his salary for the current farm year, and (2) each party shall withdraw from the farm business his total capital invested in improvements, livestock, crops, and machinery, except as otherwise specified in the contract. The value of the capital withdrawn shall be the inventoried value as shown by the farm business accounts. After each party withdraws his invested capital, any capital remaining in the farm business shall be divided as follows: One-third of the remaining capital to the manager, and two-thirds of the remaining capital to the landowner.

On March 1, 1936, the date the contract went into effect, the landowners' net capital amounted to $9,354.97, the manager's net capital at that time amounted to $5,063, leaving what is termed "capital unbalance" on the same day of $4,291.97. The financial statement of the McWha farms on March 1, 1945, the date the contract was terminated,

showed a total inventory book value of $47,650.37. The net worth of the plaintiff's interest was shown to be $6,072.08, and defendants' interest $38,534.23.

The record discloses that the plaintiff testified to the value of certain machinery, namely a side-delivery rake that had been depreciated off, as being of the actual value of $50, and a five-row go-dig that had been depreciated off had an actual value of $50, and a stacker that had the book value of $28.65, which was sold after he had terminated the contract, was worth $150; and that he purchased a corn-picker for the amount of $649 and some cents, that had been charged off. This amount is included in the assets of the business in the trial balance appearing in exhibit 3, which is an inventory of the assets of the McWha farms.

Exhibit A is an inventory of the property owned by the McWha farms on March 1, 1945, as contended for by the plaintiff. In this inventory there are listed 105 cows (the proper total should be 99 cows), 14 heifers, 4 bulls, and 4 head of horses. The plaintiff places the value of the cows at $80 per head, the heifers at $60 per head, the four bulls at $910, and the horses at $50 per head. He refuses to place any value on the balance of the property owned by the McWha farms, and when the defendant, R. D. McWha, requested the plaintiff to place values on the different items he refused because he did not want the stuff on his hands.

Defendant R. D. McWha testified that exhibit 4 carried all the items that were on the books of the McWha farms and set up in the depreciation schedules as contained in the contract. He explained that in any business of such size there are a large number of items that have been written off to expense and have never been set up to capital, and that the items are still a part of the business set-up and listed in exhibit B, and that the items contained in both of these exhibits are all of the property that was owned by the McWha farms on March 1, 1945. Exhibit 4 was prepared because the farm book copies that the plaintiff received contained only lump sums, and were not item-

ized. Exhibit 4 shows the items charged to the business, the date thereof, the cost, the depreciation charged, and the book values, where same have such values, as of January 1, 1945, and the actual values placed on the items by McWha.

The plaintiff, in his testimony, did not controvert the testimony of the defendant wherein the defendant placed the actual values of the separate items appearing in exhibits 4 and B as of March 1, 1945, except that he did not think the values were fair, and the only values that the plaintiff placed on the property are those that have heretofore been set out in the opinion.

According to the audit made by the defendant, consisting of the items appearing in exhibits 4 and B, and hogs, cattle, soil conservation account, and interest in the corn, and allowing a $10 increase over and above the book value on 99 head of cattle, there is a balance of $6,122.10 shown. Defendants offered to confess judgment in the amount of $5,627.42. In the testimony this figure was changed to $6,164.64.

The evidence is in conflict as to the value of the cattle. The plaintiff, on his cross-examination, fixed the value of the cattle at $80 per head, or $330 more than the actual value placed on the cattle by the defendants.

The plaintiff testified that exhibits A and A-2 constituted an inventory of the property owned by the McWha farms on March 1, 1945, and that certain items set forth in the inventory were not included in exhibits 4 and B which the defendants claim constituted all of the property owned by the McWha farms on that date. The plaintiff failed to point out the specific items in exhibits A and A-2 which did not appear in exhibits 4 and B. There are a few items on exhibits A and A-2 which do not appear on exhibits 4 and B.

Concerning the alfalfa standing on the lands, the defendants' testimony as to the actual value of this crop, deducting the operating expense and loss, is $931.16. Exhibit 3, the inventory, shows the alfalfa as a total of 409.7 acres, from 1940 to 1944, inclusive, of the value of $2,832.62,

and on the trial balance in the same exhibit, alfalfa crops are shown to be valued at $2,832.62.

Inasmuch as the actual value of the alfalfa is to be taken as of March 1, 1945, the court should take such additional evidence on this item as may be necessary to determine the actual value of such crop on March 1, 1945.

With reference to the irrigation machinery and investment, these items have been carried from the very first upon the books of the business, purchased with the funds of the business with the knowledge of the plaintiff, and used in the business by him. The actual value placed upon these items by the defendants' testimony as of March 1, 1945, is not controverted, except by the audit in behalf of the plaintiff wherein the auditor claims that such items should be charged to the defendants. There is no foundation for this conclusion, as the matter is covered by the contract, and the plaintiff has been acquainted with the entire situation from its inception and never objected to the manner of handling this item until he instituted this action.

In exhibit 3, under McWhas' financial statement as of March 1, 1945, under inventories, defendants' interest in the 1944 corn is shown to be $10,588.61. The plaintiff's interest in this corn is shown as $1,057.71. The testimony with reference to the 1944 crop of corn is in conflict. The plaintiff testified that the crop consisted of between 16 and 17 thousand bushels, while the defendant, R. D. McWha, testified that 16,873 bushels of corn was picked in 1944, and that he arrived at the inventory the first of the year 1945. He estimated a ten percent shrinkage, which would be 1,687.7, leaving the number of bushels of corn on hand as of January 1, 1945, 15,189.3, which is in error on defendants' figures. He figured the market price as of March 1, 1945, at 90 cents per bushel, less 10 cents per bushel for handling, leaving the amount 80 cents per bushel, which left the inventory of the corn in the amount of $12,151.44. The corn was sold at a later date for the ceiling price of $1.06½ on the place, and one twenty-fifth of a cent per

bushel per day was charged for storage from the date of purchase to the date of delivery. This amount does not appear in the record. The plaintiff received 352.1 bushels of corn, and some of the corn was used in the feeding operations of the parties from the fall of 1944 until the plaintiff left the premises. Until it can be determined just how many bushels of corn was sold, it would be impossible to know whether or not the ten percent shrinkage, as testified to by the defendant is correct.

It is apparent from this state of the record that a finding of the actual value of the corn on March 1, 1945, cannot be ascertained at this time.

We deem the appointment of a receiver to take charge and possession of the property involved in this litigation to be unnecessary. This business is conducted solely upon the real estate of the defendants. The assets of the business consist of improvements on the real estate, fences, and irrigation wells thereon, machinery owned and purchased with the view of operating these particular lands. To sell these items, under the circumstances, would be detrimental and impractical, and to attempt to divide this property in kind would not be feasible and, in fact, it cannot be divided in kind.

When the plaintiff left the defendants' premises the greater portion of the property remained under the care and control of the defendants, and the farm machinery was used by them in their 1945 farming operations. There is some evidence as to whether or not the defendants would pay for the use of this farm machinery on a depreciated basis as shown on the schedule in the contract. The evidence is not clear in this respect, and we conclude that inasmuch as the accounting is to be made as of March 1, 1945, this item constitutes no part of the accounting, and is not provided for in the contract between the parties.

We conclude the actual value placed on the separate items of property as of March 1, 1945, by the defendant, R. D. McWha, and as explained in this opinion, shall constitute

the actual value of such items as of that date. The court shall take such additional evidence as may be required to enable it to determine the actual value of the corn and alfalfa crops as of March 1, 1945, and the actual value of the items appearing in exhibits A and A-2 which are not included in exhibits 4 and B; the court shall likewise determine the actual value of the cows as of March 1, 1945, and also the actual value of the other items in dispute to which plaintiff testfied, and fix the value of the Federal Land Bank stock, and when the foregoing actual values are determined, the court shall then render a money judgment in favor of the plaintiff in such amount as constitutes his proportionate share of such assets as provided for in the contract.

The defendants shall be given a period of 30 days from the date of rendition of the judgment to settle it.

During the period until the final judgment is rendered and settlement thereof made as provided for in this opinion, the defendants shall have the right to dispose of such property constituting the assets of the McWha farms as of March 1, 1945, as may be necessary in the operation of the farming interests, and all moneys received from sales of such property, if any are made, shall be deposited with the clerk of the district court until settlement of the judgment is had.

We reverse the judgment of the trial court with directions to proceed with an accounting in accordance with this opinion.

REVERSED WITH DIRECTIONS.